UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH L. ANTHONY,

        Plaintiff,        Civil Action No. 13-11083
                               Honorable Stephen J. Murphy, III
                               Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [15, 16]

      Plaintiff Kenneth L. Anthony ("Anthony") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [15, 16], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.**        **RECOMMENDATION**

      For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Anthony is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [16] be DENIED, Anthony's Motion for Summary Judgment [15] be GRANTED, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED back to the ALJ for further proceedings consistent with this Recommendation.

## II.      REPORT

### A.      Procedural History

On September 9, 2010, Anthony filed an application for SSI, alleging a disability onset date of September 9, 2010. (Tr. 129-32). This application was denied initially on December 1, 2010. (Tr. 86-89). Anthony filed a timely request for an administrative hearing, which was held on October 4, 2011, before ALJ Greg Holsclaw. (Tr. 36-74). Anthony, who was represented by attorney Joseph Dunn, testified at the hearing, as did vocational expert Donald Hecker. (*Id.*). On October 28, 2011, the ALJ issued a written decision finding that Anthony is not disabled. (Tr. 21-32). On January 10, 2013, the Appeals Council denied review. (Tr. 1-6). Anthony filed for judicial review of the final decision on March 11, 2013. (Doc. #1).

### B.      Background

#### 1.      *Disability Reports*

In an undated disability report, Anthony indicated that his ability to work is limited by "back problems," emphysema, bipolar disorder, and depression. (Tr. 149). Anthony reported that these conditions first interfered with his ability to work on April 1, 1998, and that he has not worked since that time. (*Id.*).

Anthony completed eighth grade (taking special education classes), but had no further education. (Tr. 150). Prior to stopping work, he worked as a welder and general laborer for manufacturing companies. (*Id.*). Anthony indicated that he had treated with several medical providers regarding his physical and mental ailments. (Tr. 152-54). At the time of the report, he was taking numerous medications. (Tr. 151-52).

In a function report dated October 3, 2010, Anthony reported that he lives in a house with his mother. (Tr. 156). When asked how his conditions limit his ability to work, Anthony indicated that he has difficulty standing and walking for more than ten minutes at a time, he gets

"out of breath," and his memory is poor. (*Id.*). When asked to describe his daily activities, Anthony indicated that although he tries to get as much exercise as possible, he spends a lot of time lying down because he cannot sit, stand, or walk for very long. (Tr. 157). His conditions interfere with his sleep (he experiences back pain and coughing, and his mind "races"). (*Id.*). Anthony is able to attend to his own personal care, although it is difficult for him to bend over to put on socks. (*Id.*). He prepares his own meals (including sandwiches and microwavable meals) on a daily basis. (Tr. 158). He is able to do housework, although it takes him longer than it used to. (*Id.*). He goes outside once or twice a day and is able to ride in a car. (Tr. 159). He goes shopping for food and clothes once a month, but it takes all day because he has to "take breaks." (*Id.*). He is able to pay bills and handle a checking and savings account. (*Id.*). He visits friends and family and attends church every Sunday. (*Id.*).

When asked to identify functions impacted by his condition, Anthony checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, concentration, understanding, and following instructions. (Tr. 161). He indicated that he can lift 25 pounds and walk for 10 minutes before he needs to stop and rest. (*Id.*). He is not able to follow written or spoken instructions very well. (*Id.*). He gets along fine with authority figures, but does not handle stress or changes in routine well. (Tr. 162).[1]

    2.    *Anthony's Testimony*

At the time of the October 4, 2011 hearing before the ALJ, Anthony was living with his elderly mother and adult daughter. (Tr. 41). Anthony testified that he completed eighth grade and took some additional courses while in prison (from 2007-2010), but did not obtain a General Equivalency Diploma. (Tr. 44-45). He had worked as a welder for two different companies for

---

[1] In a third party function report dated October 3, 2010, Anthony's mother, Phyllis Anthony, generally corroborated Anthony's allegations. (Tr. 168-75).

a total of fifteen years, but had not had a job since 1998.  (Tr. 41-43).  He first injured his back while working as a welder; he filed a worker's compensation claim but ultimately quit working because he "just couldn't take it."  (Tr. 44, 51-52).

Anthony testified that his low back pain is his "biggest problem."  (Tr. 60).  It has "gotten worse" over the past few years, and "it's gotten to the point where [he] can't hardly get out of bed very much anymore."  (Tr. 45-46, 52).  He has to lie down a lot during the day because he can neither sit nor stand for too long.  (Tr. 45-46).  If he stands or walks for more than 10-15 minutes, his feet "swell up" and his legs ache.  (Tr. 47).  He testified that he needs lumbar fusion surgery, but his insurance will not cover the hospital stay.  (Tr. 46-47, 61).  He takes pain medication every four hours, but it does not help; the only way he can get any relief is by lying down.  (Tr. 47-48).  Anthony also suffers from emphysema, which causes shortness of breath and fatigue.  (Tr. 53).  He uses inhalers, which keep this condition under control.  (Tr. 54).

Anthony testified that he stopped using illegal drugs in 2007; after that, he attended support group meetings until 2010, when he "finished the program."  (Tr. 50-51).  He is receiving mental health treatment for bipolar disorder and depression.  (Tr. 56).  In addition, he is taking several medications for his mental impairments, including Abilify, Wellbutrin, trazodone, and Latuda.  (*Id.*).  Although these medications cause "dizzy spells," Anthony testified that they do help with his conditions.  (Tr. 56-57).

Anthony further testified that, on a typical day, he watches television, goes for short walks, and lies down.  (Tr. 48-49).  He goes to church every Sunday morning and goes camping "once in a while."  (Tr. 50).  His mother and daughter do most of the housework because his back "bothers" him.  (Tr. 61-62).

        3.    *Medical Evidence*

The ALJ found that Anthony suffers from the severe impairments of lumbar disc

degeneration, chronic obstructive pulmonary disease ("COPD")/emphysema, depression, bipolar disorder, and anxiety. (Tr. 23-24). Because Anthony only challenges the ALJ's assessment of his back condition, the Court will focus on the medical evidence pertaining to that impairment.

On November 13, 2010, Anthony underwent a consultative examination with Dr. Scott Lazzara. (Tr. 214-18). Anthony complained of chronic back pain, radiating into his left leg. (Tr. 214). He reported being able to perform activities of daily living, including driving and cooking. (*Id.*). He also indicated that he could climb ladders (with difficulty) and that he tried to rake leaves, but it aggravated his back pain.[2] (*Id.*). Anthony reported that he could sit for about one hour, stand for about fifteen minutes, walk approximately ½ mile, and lift "about 60 pounds." (*Id.*).

On examination, Dr. Lazzara found no evidence of joint laxity, crepitance, or effusion. (Tr. 215). Anthony's grip strength was intact, his dexterity was unimpaired, and he had no difficulty getting on and off the examination table, heel-toe walking, or squatting. (*Id.*). He had no difficulty hopping on his right leg and mild difficulty hopping on his left leg. (*Id.*). However, Anthony displayed diminished joint space height with lumbar spine straightening, had diminished motor strength and reflexes in the left lower extremity, and walked with a mild left limp. (Tr. 217). In conclusion, Dr. Lazzara opined as follows:

> [The back pain] was apparently due to a lifting accident he sustained in the 1990's. He states he has undergone conservative management. He is now on anti-inflammatories. He had some weakness in the left leg and compensates with a mild left limp but remains relatively stable. He most likely has some mild to moderate degenerative arthropathy in his back. X-rays may be of benefit. His range of motion was diminished moderately.

(Tr. 218).

---

[2] Later in his report, Dr. Lazzara characterized Anthony's activities somewhat differently, saying, "He is still able to do outdoor activities including yard work and merely avoids any repetitious lifting, bending or squatting." (Tr. 218).

5

On December 1, 2010, a physical residual functional capacity ("RFC") assessment was completed. (Tr. 80-81). Kevin Salk, a state agency single decisionmaker, examined Anthony's then-available medical records and concluded that he retained the ability to occasionally lift 25 pounds, frequently lift 20 pounds, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. (Tr. 80). Mr. Salk further opined that Anthony could frequently stoop and kneel; occasionally crouch, crawl, and climb ramps or stairs; and never climb ladders, ropes, or scaffolds. (Tr. 80-81).

The record also contains treatment notes from Renee Doherty, F.N.P., B.C., Anthony's primary care practitioner. On January 19, 2011, Anthony saw Nurse Doherty, complaining of chronic lumbar pain that was "getting worse." (Tr. 276). Nurse Doherty noted that Anthony had lumbar tenderness with palpitation and ordered x-rays, which showed levoconvex scoliosis with mild to moderate degenerative changes. (Tr. 277, 289). On January 19, 2011, Nurse Doherty completed a medical source statement, in which she opined that Anthony could occasionally lift up to 50 pounds; frequently lift up to 20 pounds; stand less than one hour in an eight-hour work day; sit less than two hours in an eight-hour workday; never climb ropes or ladders or crawl; and only occasionally push and pull with his hands and feet, climb ramps or stairs, balance, stoop, kneel, crouch, and reach. (Tr. 220).

A February 13, 2011 MRI of Anthony's lumbar spine revealed (1) spinal canal stenosis at L4-L5 with moderate right neural foraminal stenosis secondary to degenerative spur formation and posterolateral disc protrusion; (2) right paracentral disc herniation at L5-S1 without significant neural foraminal stenosis; and (3) mild spinal stenosis at L3-L4. (Tr. 224).

In May of 2011, Anthony began treating with pain management specialist Dr. John DiBella. Anthony reported that his low back pain radiated into his hips and legs, and that he

6

experienced intermittent numbness and tingling in his legs and feet. (Tr. 229). On examination, he had spinous tenderness at L4 and L5 and moderate paraspinous muscle spasms in the lower lumbar segments bilaterally. (*Id.*). He had bilateral positive straight leg raising tests, mild weakness of L4-L5 enervated musculature bilaterally, decreased sensation at the L5 dermatome, diminished deep tendon reflexes, and no Achilles reflex in either leg. (*Id.*). Anthony displayed a mildly antalgic gait and limited lumbar flexion and extension. (*Id.*). Dr. DiBella diagnosed Anthony with radiculopathy at L4-L5 associated with neural foraminal stenosis. (Tr. 230). He administered steroid injections to treat Anthony's pain. (Tr. 226-28). On May 19, 2011, however, Dr. DiBella noted that Anthony had received "only minimal relief of pain" with these injections. (Tr. 226).

As a result, Anthony saw Dr. Mark Adams, a neurosurgeon, on June 6, 2011. (Tr. 235-36). With respect to Anthony's complaints of back pain, Dr. Adams' notes indicate:

> Kenneth is here today to follow up after having injections. He had a set of 3. He states they did not work. He actually went camping this past weekend and was experiencing quite a bit of back pain and leg pain with anything that he tried to do. He just could not enjoy himself. Kenneth did ask if he could be prescribed a stronger pain medication. I did explain to him that he normally only prescribes medications when he does a surgery. Has tried all types of treatment without success.

(Tr. 235). On examination, Anthony had spinous process tenderness in the lower back; his straight-leg raising was positive; and he had weakness in all areas in his lower extremities innervated by L2 through S1, and in his upper extremities in all areas innverated by C4 through T1. (Tr. 236). Deep tendon reflexes in his knees, ankles, biceps, and triceps were reduced. (*Id.*). However, Anthony was able to heel-toe walk; he had a steady and even gait; and his sensation was intact. (*Id.*). Dr. Adams diagnosed Anthony with lumbar disc herniation with radiculopathy and spinal stenosis. (*Id.*). In conclusion, Dr. Adams indicated that "surgery is recommended," specifically posterior lumbar fusion with plating at the L4-L5 level. (*Id.*).

7

On June 23, 2011, Dr. Adams completed a medical source statement, in which he opined that Anthony could occasionally lift up to 10 pounds; frequently lift up to 5 pounds; stand less than one hour in an eight-hour work day; sit less than two hours in an eight-hour workday; never push or pull with his hands and feet, climb ladders or ropes, balance, stoop, kneel, crouch, crawl, or reach; and only occasionally climb ramps or stairs. (Tr. 233).

Additional x-rays, taken on August 13, 2011, showed that Anthony's lumbar spine was stable as compared to his January 2011 x-rays. (Tr. 259). Specifically, the August 2011 x-rays showed mild scoliotic curvature with mild degenerative disc disease changes at L4-L5 and mild to moderate facet arthritic changes at L3-L4 and L4-L5. (*Id.*).[3]

### 4. *Vocational Expert's Testimony*

Donald Hecker testified as an independent vocational expert ("VE") at the hearing before the ALJ. (Tr. 63-70). The VE characterized Anthony's past relevant work as ranging from skilled to unskilled in nature and performed at the "very heavy" exertional level. (Tr. 65). The ALJ asked the VE to imagine a claimant of Anthony's age, education, and work experience, who could perform light work, with the following additional limitations: standing and/or walking for no more than 6 hours per 8-hour workday; no concentrated exposure to temperature extremes of heat or cold, wetness, or humidity; must work in a controlled air environment, free from concentrated dust, fumes, gases, or other pulmonary irritants; only occasional stooping, bending, kneeling, crouching, crawling, and climbing of stairs and ramps; no climbing of ladders, ropes,

---

[3] Anthony submitted a number of additional medical records to the Appeals Council after the ALJ's decision. (Tr. 319-435). Most relevant among those records is an MRI of Anthony's lumbar spine performed on March 16, 2012, which shows disc extrusion posteriorly toward the right at L5-S1 that deforms the thecal sac and impinges upon the right S1 nerve root. (Tr. 391). However, Anthony does not refer to this evidence in his motion for summary judgment, or argue that this case should be remanded pursuant to sentence six of 42 U.S.C. §405(g) for consideration of new and material evidence. Consequently, the Court will not summarize and discuss this additional medical evidence herein.

or scaffolds; and no reading required at higher than a sixth-grade level. (Tr. 65-68). In addition, the ALJ limited Anthony to performing unskilled work that consists of simple, routine, and repetitive tasks; no more than one- to two-step instructions; no more than occasional contact with the general public; and no more than frequent contact with co-workers and supervisors. (*Id.*). The VE testified that the hypothetical individual would not be capable of performing Anthony's past relevant work. (Tr. 66). However, the VE testified that the hypothetical individual would be capable of working in the positions of cleaner (8,000 jobs in the state of Michigan), packager (4,500 jobs), and inspector/checker (4,500 jobs). (Tr. 66-68).

    **C.**    **Framework for Disability Determinations**

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Anthony is not disabled under the Act. At Step One, the ALJ found that Anthony has not engaged in substantial gainful activity since September 9, 2010, the application and alleged onset date. (Tr. 23). At Step Two, the ALJ found that Anthony has the severe impairments of lumbar disc degeneration, COPD/emphysema, depression, bipolar disorder, and anxiety. (Tr. 23-24). At Step Three, the ALJ found that Anthony's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.[4] (Tr. 24-27).

The ALJ then assessed Anthony's residual functional capacity ("RFC"), concluding that he is capable of performing light work, with the following additional limitations: standing and/or walking for no more than 6 hours per 8-hour workday; no concentrated exposure to

---

[4] The Court notes that the ALJ's Step Three analysis of Anthony's lumbar disc degeneration was conclusory in nature and failed to explain why Anthony did not meet or medically equal the Listing 1.04A. (Tr. 24). While the Court does not pass on the sufficiency of the ALJ's decision in this regard, because it is recommending that this matter be remanded, and because the March 2012 lumbar spine MRI results (which Anthony submitted after the ALJ's decision) appear to show some nerve root impingement (Tr. 391), on remand, the ALJ should more thoroughly discuss whether Anthony's lumbar spine impairment meets or medically equals Listing 1.04A.

10

temperature extremes of heat or cold, wetness, or humidity; must work in a controlled air environment, free from concentrated dust, fumes, gases, or other pulmonary irritants; only occasional stooping, bending, kneeling, crouching, crawling, and climbing of stairs and ramps; no climbing of ladders, ropes, or scaffolds; and no reading required at higher than a sixth-grade level. (Tr. 27-30). In addition, the ALJ limited Anthony to performing unskilled work that consists of simple, routine, and repetitive tasks; no more than one- to two-step instructions; no more than occasional contact with the general public; and no more than frequent contact with co-workers and supervisors. (*Id.*).

At Step Four, the ALJ determined that Anthony is unable to perform his past relevant work. (Tr. 30). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Anthony is capable of performing a significant number of jobs that exist in the national economy. (Tr. 30-31). As a result, the ALJ concluded that Anthony is not disabled under the Act. (Tr. 31).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal

quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### F. Analysis

As set forth above, on June 23, 2011, Anthony's treating neurosurgeon, Dr. Mark Adams, completed a medical source statement, in which he opined that Anthony can occasionally lift up

to 10 pounds; frequently lift up to 5 pounds; stand less than one hour in an eight-hour work day; sit less than two hours in an eight-hour workday; never push or pull with his hands and feet, climb ladders or ropes, balance, stoop, kneel, crouch, crawl, or reach; and only occasionally climb ramps or stairs. (Tr. 233). In formulating Anthony's RFC, the ALJ considered Dr. Adams' opinion but gave it "little weight," finding it inconsistent with Dr. Adams' own examination findings, as well as statements Anthony made regarding his "recreational activities." (Tr. 29-30). Before this Court, Anthony's sole argument is that the ALJ erred in giving "little weight" to Dr. Adams' opinion and that, as a result, the ALJ's RFC finding is not supported by substantial evidence. The Court finds merit to this argument.

Under the applicable regulations, an ALJ must give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. §404.1527(d)(2)). If an ALJ declines to give a treating physician's opinion controlling weight, he must then determine how much weight to give the opinion, "by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. §416.927(d)(2).

In addition, and particularly relevant here, the treating source rule contains a procedural, explanatory requirement that an ALJ give "good reasons" for the weight given a treating source opinion. *See Wilson v. Comm'r of Soc. Sec.*, 2012 WL 6737766, at *8 (E.D. Mich. Nov. 19,

13

2012); *Soc. Sec. Rul.* 96-2p, 1996 WL 374188, at *5 (July 2, 1996) (providing that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record"). Those reasons "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting *Soc. Sec. Rul.* 96-2p). "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights" and "'to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that []he is not.'" *Id*. at 937-38 (quoting *Wilson*, 378 F.3d at 544). This requirement also "safeguards a reviewing court's time, as it 'permits meaningful' and efficient 'review of the ALJ's application of the [treating physician] rule.'" *Id*. at 938 (quoting *Wilson*, 378 F.3d at 544-45).

In this case, the ALJ gave "little weight" to Dr. Adams' June 23, 2011 medical opinion. (Tr. 29-30). In doing so, the ALJ did not discuss each of the factors set forth in 20 C.F.R. §416.927(d)(2); rather, he articulated two purportedly "good reasons" for discounting Dr. Adams' opinion. First, he found Dr. Adam's "conclusions and opinions inconsistent with, and unsupported by, his own examination findings from June 2011"; and, second, he found Dr. Adams' opinion "inconsistent with the claimant's reported description of his recreational activities, including camping and going to the beach." (Tr. 29-30) (internal citations omitted). A review of the record, however, reveals that the reasons articulated by the ALJ for affording Dr. Adams' opinion "little weight" are not supported by substantial evidence.

As an initial matter, although the ALJ rejected Dr. Adams' opinion as "inconsistent with,

14

and unsupported by, his own examination findings from June 2011," the ALJ failed to identify what specific inconsistencies were at issue. (Tr. 29). And, an independent review of those examination findings makes clear that they are not inconsistent with Dr. Adams' subsequent opinion. Specifically, on examination, Dr. Adams found that Anthony had spinous process tenderness in his lower back; a positive straight-leg raising test; weakness in all areas in his lower extremities innervated by L2 through S1; weakness in all areas in his upper extremities in all areas innverated by C4 through T1; and reduced deep tendon reflexes in his knees, ankles, biceps, and triceps. (Tr. 236). In rejecting Dr. Adams' opinion as inconsistent with his examination findings, the ALJ did not mention these critical facts. It is true, as the Commissioner notes, that during the same examination, Dr. Adams observed Anthony had intact sensation, a steady and even gait, and was able to heel-toe walk. (Doc. #16 at 13 (citing Tr. 236)). Nevertheless, Dr. Adams, diagnosed Anthony with lumbar disc herniation with radiculopathy, spinal stenosis, and sciatica, and indicated that "surgery is recommended," specifically posterior lumbar fusion with plating at the L4-L5 level. (Tr. 236). Taking these facts together, Dr. Adams' opinion that Anthony had significant exertional and nonexertional limitations (Tr. 233) can hardly be considered "inconsistent with" and "unsupported by" the objective findings identified above (positive straight-leg raising, muscle weakness, absent reflexes), or Dr. Adams' diagnosis and recommended course of treatment (Tr. 236). As a result, the ALJ's decision to assign "little weight" to Dr. Adams' opinion because of this purported inconsistency is not supported by substantial evidence.

      Similarly, the ALJ gave Dr. Adams' opinion "little weight" because it was purportedly inconsistent with Anthony's "reported description of his recreational activities, including camping and going to the beach." (Tr. 30). Again, however, a review of Dr. Adams' progress

15

notes belies the ALJ's conclusion. Specifically, Dr. Adams' notes read as follows:

> Kenneth is here today to follow up after having injections. He had a set of 3. He states they did not work. **He actually went camping this past weekend and was experiencing quite a bit of back pain and leg pain with anything that he tried to do. He just could not enjoy himself. Kenneth did ask if he could be prescribed a stronger pain medication.** I did explain to him that he normally only prescribes medications when he does a surgery. Has tried all types of treatment without success.

(Tr. 235) (emphasis added). A fair reading of Dr. Adams' notes, then, indicates that Anthony's attempted camping trip – which resulted in "quite a bit of back pain and leg pain," to the point where he "could not enjoy himself," and requested "stronger pain medication" – was actually consistent, not inconsistent, with Dr. Adams' June 2011 opinion. Thus, the ALJ's decision to discount Dr. Adams' opinion because of this alleged inconsistency is not supported by substantial evidence.[5]

In her motion for summary judgment, the Commissioner points to other evidence in the record that arguably supports the ALJ's decision to afford Dr. Adams' opinion "little weight." (Doc. #16 at 14-15). Specifically, the Commissioner asserts that the ALJ's assessment of Dr. Adams' opinion was "bolstered" by Dr. Lazzara's findings that Anthony had no difficulty getting on and off the examination table, heel-toe walking, or squatting. (*Id.* (citing Tr. 215)). And, the Commissioner asserts that the ALJ's decision to discount Dr. Adams' opinion was further supported by Nurse Doherty's opinion, which "found [Anthony] significantly less limited than Dr. Adams." (*Id.* (citing Tr. 220)). As Anthony correctly points out, however, "it is the

---

[5] The Commissioner also points to statements made by Anthony to his psychiatrist at Community Mental Health in June of 2011, wherein he indicated that "he was 'getting more physically active' and that 'he and the family ha[d] been going to the beach pretty regularly,'" as support for the ALJ's conclusion. (Doc. #16 at 13 (quoting Tr. 239)). These statements, however, which were made in the context of a mental health report, were followed immediately by further explanation of Anthony's physical pain: "He does have some exercise intolerance. He also has some low back pain and is being evaluat[ed] for surgery on lumbar discs." (Tr. 239). Thus, the statements relied on by the Commissioner simply do not provide substantial evidence in support of the ALJ's decision to discount Dr. Adams' opinion.

16

responsibility of the Administration, and not the US Attorney, to properly evaluate the evidence and explain the reasoning for the final conclusions." (Doc. #17 at 3). The ALJ potentially could have discounted Dr. Adams' opinion as inconsistent with Dr. Lazzara's findings or Nurse Doherty's opinion, but he did not do so, and the Court declines to uphold the ALJ's conclusion on that basis, as the Commissioner's "post hoc rationalization at this stage is insufficient." *Beckrow v. Comm'r of Soc. Sec.*, 2012 WL 1564669, at *12 (E.D. Mich. Apr. 12, 2012) (internal quotations omitted); *see also Berryhill v. Shalala*, 4 F.3d 993, (6th Cir. 1993) ("courts may not accept appellate counsel's post hoc rationalizations for agency action") (internal quotations omitted); *Schroeder v. Comm'r of Soc. Sec.*, 2013 WL 1316478, at *13 (E.D. Mich. Mar. 1, 2013) (noting that "the Commissioner's post hoc rationalization is not an acceptable substitute for the ALJ's lack of rationale").[6]

As the Sixth Circuit has repeatedly stressed, it is incumbent upon the ALJ to assess what weight a treating source's opinion deserves and to specifically articulate that weight and the "good reasons" supporting it; when the ALJ fails to do so, remand is appropriate. *See, e.g.*, *Cole*, 661 F.3d at 938-39 (ordering remand when ALJ failed to assign a specific weight to a treating source's opinion or explain why part of that opinion was adopted while other parts were rejected); *Sawdy v. Comm'r of Soc. Sec.*, 436 F. App'x 551, 553-54 (6th Cir. 2011) ("[W]hen an

---

[6] Moreover, just as the Commissioner identifies evidence that the ALJ could have relied on in discounting Dr. Adams' opinion, Anthony highlights competing evidence that was consistent with Dr. Adams' opinion. Specifically, Anthony points to the results of his February 13, 2011 lumbar spine MRI, which showed (1) spinal canal stenosis at L4-L5 with moderate right neural foraminal stenosis secondary to degenerative spur formation and posterolateral disc protrusion; (2) right paracentral disc herniation at L5-S1 without significant neural foraminal stenosis; and (3) mild spinal stenosis at L3-L4. (Doc. #15 at 11 (citing Tr. 224)). And, Anthony cites to Dr. DiBella's findings that he had bilateral positive straight leg raising tests, muscle weakness, decreased sensation, diminished deep tendon reflexes, no Achilles reflex in either leg, and limited lumbar flexion and extension. (*Id.* (citing Tr. 229)). Anthony is entitled to have a decision by the ALJ which properly evaluates all of the record evidence, whichever side it favors.

17

ALJ violates the treating-source rule, '[w]e do not hesitate to remand,' and 'we will continue remanding when we encounter opinions from ALJ[s] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (an ALJ's "failure to follow the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record'") (quoting *Rogers*, 486 F.3d at 243)).

The Court recognizes that there may be cases "where the Commissioner has met the goal of §1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Friend*, 375 F. App'x at 551 (internal quotations omitted). Thus, "If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Id.*; *see also Cole*, 661 F.3d at 940.[7] In this case, however, Dr. Adams' opinion was not so "inconsistent with, and unsupported by" his own examination findings or Anthony's "reported description of his recreational activities," that the Court can conclude the ALJ's reasoning is necessarily supported by "good reasons." *See Cole*, 661 F.3d at 940 ("It may be true that, on remand, the Commissioner reaches the same conclusion as to [claimant]'s disability while complying with the treating physician rule and the good reasons requirement; however, [claimant] will then be able to understand the

---

[7] The Sixth Circuit has also indicated that an ALJ's error in applying the treating physician rule may be deemed harmless if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it" or "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion." *Friend*, 375 F. App'x at 551 (quotation marks omitted). In light of the medical evidence discussed above, this Court finds neither circumstance present here.

18

Commissioner's rationale and the procedure through which the decision was reached. The case must be remanded."). For that reason, the ALJ's decision to give "little weight" to Dr. Adams' June 2011 opinion is not supported by substantial evidence, and this matter should be remanded to the ALJ to address the above issues.

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [16] be DENIED, Anthony's Motion for Summary Judgment [15] be GRANTED, the ALJ's decision be REVERSED, and this case be REMANDED for further proceedings consistent with this Recommendation.

Dated: November 15, 2013　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 15, 2013.

                                            s/Felicia M. Moses
                                            FELICIA M. MOSES
                                            Case Manager